In the case of Collender v. Came [Case No. 2,999], decided by Mr. Justice Clifford, in this circuit, at the May term, 1876, it did not become necessary for the court to decide whether the reissued patent of the complainant was for an art or a manufacture, as the defendant in that case used the Collender process and made the Collender product. In this case it becomes necessary to decide that question, for only eight of the cushions proved to have been made by the defendant were made by the process described by Collender, while others made by a different process are claimed by complainant to be the equivalents of his product. In this case the patent is construed to be for the art of: "Uniting the parts employed in forming combination billiard-cushions, by placing the harder or more dense and less elastic substances in a mold, and allowing the melted rubber to flow against, around, or into the harder or more dense and less elastic substances, or causing the plastic rubber, by pressure, to unite with the same, and then vulcanizing the India-rubber, substantially as and for the purpose set forth." Under this construction of the patent, defendant is only liable for infringement, by reason of making eight sets of cushions by the Collender process.

———

## Case No. 2,999.

### COLLENDER v. CAME et al.

[4 Cliff. 393;[1] 2 Ban. & A. 412; 10 O. G. 467.]

Circuit Court, D. Massachusetts. Sept. 2, 1876.

PATENTS—"BILLIARD CUSHIONS"—INFRINGEMENT —EVIDENCE.

1. The claim of the complainant's patent was for "uniting the parts employed in forming combination billiard cushions by placing the harder, or more dense, and less elastic substances in a mould, and allowing the melted rubber to flow against, around, or into the harder, or more dense, and less elastic substances, or causing the plastic rubber, by pressure, to unite with the same, and then vulcanizing the India-rubber," &c. The defendant's patent, under which he manufactured, claimed "an India-rubber

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

billiard cushion, constructed with an embedded spring band, having woven about it a light and close-fitting casing or covering," &c. The defendant's band was entirely surrounded by rubber, and its location was secured by suitably fastening it in the rubber cushion before vulcanization. *Held*, the manufacture of the defendant was substantially the same as that of complainant.

2. ·If mechanical differences exist, but the two products and the general mode of construction are the same, as would appear by a comparison of the two manufactures, the court will hold that infringement is proved.

In equity. A patent, in due form [No. 19,-074], was granted to the complainant [Hugh W. Collender]. on the 12th of January, 1858, for a new and useful improvement in uniting comparatively hard substances to elastic foundations of billiard cushions, and the same was surrendered on the 19th of March, 1867, on account of a defective specification, and reissued [on the same day] to the same patentee for the same invention [No. 2,511]. Due application was subsequently made for an extension, and the reissued patent was subsequently extended for the further term of seven years from the expiration of the first term. Gains and profits, it was charged, had been made by the respondents [John E. Came and others], by infringing the exclusive right secured by the complainant by the said reissued patent, and he prayed for an account and for an injunction. Process having been issued and service made, the respondents appeared and filed an answer. They denied that they had made, used, or sold cushions for billiard tables in accordance with the specification of the complainant's patent, or that they had made any gains or profits by infringing the exclusive right secured to him, as charged in the bill of complaint, and, for defence upon the merits, they alleged that the patentee was not the original and first inventor of the improvement, but that the same had been previously described in the specification of a foreign patent referred to in the answer, and that it was known to and had been used by the persons therein named, and at the places specified in the answer. Pursuant to leave given, they filed an amended answer, in which they alleged that the complainant never reduced the alleged invention to practice, and that it was not capable of being used or employed upon a billiard table, or of subserving any useful purpose or result, as alleged or suggested in the specification. Satisfactory description was given of the invention in the specification, from which it appeared that it consisted in uniting the comparatively solid substances which are employed at or near the front part of billiard cushions with the elastic foundations of the cushions, by placing the more solid substances in a mould, and allowing the melted rubber to flow against or around the same, so that it should surround the back and end of the edges, and thus securely confine it, or to allow plastic rubber, or fluid rubber, to come in contact with the back of the more solid

substance, and to adhere to it by reason of said substance containing within itself a similar adhesive property to the rubber forming the foundation, so that it would adhere to the same by reason of its adhesive nature, aided, if need be, by holdfasts, or projections. on the back side or ends of the hard substances. By such means, the patentee stated that he was enabled to dispense with cement, nails, hinges, or any cloth covering to retain the hard substances in proper position on the elastic foundation. It also enabled him. as he stated, to overcome the disagreeable noise heard when the ball comes in contact with a steel strip fastened at its lower or upper edge. He also stated, that it enabled him, without the trouble of cementing, to face the front of the steel strip with a transparent facing of rubber, which would deaden the sound of the steel strip, and grip the ball sufficiently to give greater effect to twisting shots, and also to prevent the ball sliding off at an imperfect angle, instead of a proper angle, when played at a very obtuse angle against the cushion. He also added that his improvement enabled the manufacturer to save time, labor, and expense in adjusting and securing the hard substances to the softer ones, and enabled him to furnish a cushion, which, by being properly colored and finished, could be used without any woolen or cloth covering.

J. E. Maynadier, for complainant.

G. L. & R. L. Roberts, for respondents.

CLIFFORD, Circuit Justice. Patents may be granted for any new and useful art, machine, manufacture, or composition of matter, or for any new and useful improvement thereof, subject to the conditions specified in the patent act. 16 Stat. 201. Inventions, in order that they may be patentable, must be new and useful, and the improvement must be of such a character that it involved invention to make it, as the act of congress confers no right to obtain a patent except to a person who has invented or discovered what is declared to be patentable.

Patents in due form, when introduced by a party suing for an infringement, afford a prima facie presumption that the patentee is the original and first inventor of what is therein described as his invention. Other defences, however, besides want of patentability, if due notice of the same is given, are allowed by law. Three need only be mentioned: (1) That the improvement had been patented, or described in some printed publication prior to the supposed invention or discovery; (2) that the complainant was not the [original and first] [2] inventor of the improvement; (3) that the improvement had been in public use, or on sale, in this country for more than two years before the application for a patent, or that it had been abandoned. Rev. St. § 4920, p. 960.

---

[2] [From 2 Ban. & A. 412.]

Three modes of applying the invention are stated in the specification, and they are severally sufficient to show to the court that the patentee complied strictly with that provision in the act of congress which requires the applicant for a patent, before he can receive it, to file in the patent office a written description of the manner of making, constructing, and using his invention, and also to show that the invention is capable of subserving some useful purpose, as claimed by the complainant. Construed in the light of these suggestions, it is quite clear that it is for a new and useful mode of making and constructing the described parts of a billiard table.

Unquestionably the invention relates chiefly to the cushion, but the true construction of the patent is that the invention is for a new and useful mode of constructing the described part of the table used in playing billiards. Much discussion of the defence that the invention was previously described in the foreign patent named is quite unnecessary, as the court is clearly of the opinion that the theory of fact involved in the proposition cannot be sustained, for the reason that the invention is not described in the specification of that patent. Justly compared, it is so clear that the two are essentially and substantially different, that it would be waste of words to pursue the inquiry. Defences alleged in the answer must be proved, which is all that need be said in response to the proposition that the invention was previously known to, and used by, the persons named in the answer, even if it be assumed that the defence, as pleaded, is sufficient to defeat the complainant's patent, which is by no means admitted. Nothing, therefore, remains to be considered except the question of infringement. Certain admissions in the answer, and in the proofs, aid very much in determining that question; as, for example, it is admitted in the answer that the respondents have made and sold, and are now making and selling, cushions such as are described in the specification of the Came patent, and the evidence proves that they manufacture cushions like Exhibit 19, which is admitted in argument. Carefully compared, the court is of the opinion that the manufacture of the respondents is substantially the same as that of the complainant. Differences exist in the description of the primary elements of the manufacture, but the patentee of the Came patent states, that in the manufacture of his cushion the compound band is to be entirely surrounded by rubber along the whole length of the cushion, and just within it, in a line parallel to the face against which, in the use of the table, the ball strikes; and he adds that the location of the compound band is obtained by suitably securing it in the rubber-cushion mould before vulcanization, and obviously, by vulcanizing the rubber, a union is made between it and the woven casing of sufficient strength to resist all strain at that point, resulting from the impact of the balls

on the face of the cushion, the woven casing, under such strains, being held to the band by its tight and close fit, as therein previously explained. Support to the conclusion expressed is also derived from the claim of the patent, which is, "an India-rubber billiard cushion, constructed with an embedded spring band, having woven about it light and close-fitting fibrous casing or covering, as described, for the purpose specified." Mechanical differences, undoubtedly, exist, but the general mode of constructing the two cushions is the same, as more fully appears by comparing the manufacture of the respondents with the machine of the complainant, as described in the specification of his patent. Compared in that way, the conclusion must be, in the opinion of the court, that the charge of infringement is satisfactorily proved.

Decree for an account and for an injunction.

[NOTE. For another case involving this patent, see Collender v. Bailey, Case No. 2,998.]